UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

BARBARA YVETTE AGNEW,                          CASE NO. 05-11379-WSS

    Debtor.                                      Chapter 7

_____

FRANKLIN ANTONIO PHARR,

    Plaintiff,

v.                                             ADV. PROC. NO. 05-01058

BARBARA YVETTE AGNEW,

    Defendant/Debtor.

## ORDER DENYING RELIEF SOUGHT IN COMPLAINT TO DETERMINE DISCHARGEABILITY OF A DEBT PURSUANT TO 11 U.S.C. §523(a)(5), (15)

Ellen T. Turner, Counsel for Franklin Antonio Pharr
Steven A. Murray, Counsel for Barbara Yvette Agnew

This matter came before the Court on the complaint to determine dischargeability of a debt pursuant to 11 U.S.C. §523(a)(5) and/or (a)(15). The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2). After due consideration of the pleadings, testimony, evidence, arguments of counsel and briefs, the Court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

Plaintiff Franklin Pharr ("Pharr") and Defendant Barbara Agnew ("Agnew") were married approximately seven years. Prior to the marriage, Pharr purchased a home in 1992 for $15,000.

1

At the time of his marriage, the home was encumbered by a $12,000 mortgage with monthly payments of $134.00. After their marriage, Pharr and Agnew obtained other mortgages on the home to pay debts of the marriage. Although the testimony often conflicted, Pharr and Agnew testified that the funds obtained from the mortgages was used to pay off debt (such as title loans and credit card debt) incurred by both Pharr and Agnew. Both Pharr and Agnew testified that the other party incurred substantial gambling debts. The couple used Agnew's credit history and salary to obtain the mortgages on the home. Pharr was unemployed several times during their marriage, and Agnew paid the debts of the marriage while Pharr was unemployed. The present tax value of the home is $48,000.00. The house sustained significant roof damage from the recent hurricanes that has not been completely repaired.

Two of the mortgage debts are at issue this proceeding. The first is a $68,000 mortgage Household Financial with a monthly payment of $624.00 for twenty-two years. The second is also a mortgage to Household Finance for $15,000. This debt is in Agnew's name only. These debts were incurred shortly before the couple separated in 2003.

The domestic relations court for Mobile County, Alabama entered a judgment of divorce concerning Agnew and Pharr on September 23, 2003. The judgment was based on an agreement reached by the parties. The decree contained the following provisions:

> 7. THAT the homeplace located at 1961 Duncan Street, Mobile, Alabama shall be awarded to the Defendant [Pharr] and he shall have exclusive possession of same. Further, the indebtedness due Household Financial in the approximate amount of $68,000.00, which was secured for [sic] the mortgage on the homplace has approximately twenty-two (22) years left on the mortgage shall be the responsibility of the Plaintiff [Agnew] for the first ten (10) years of the mortgage, and the Defendant shall be responsible for the remaining twelve (12) years of the mortgage and each party shall hold the other harmless therefrom. In the event the Defendant sells the homeplace, the Plaintiff shall be awarded the sum of

2

$15,000.00 or one-half (½) of the net proceeds of the sale of the homeplace, whichever amount is lesser. However, the Defendant is under no obligation to sell the homeplace.

. . .

9. THAT the Plaintiff shall be responsible for the loan in her name with Household Financial in the approximate amount of $15,000.00 and she shall hold the Defendant harmless therefrom.

10. THAT the Defendant shall be responsible for the indebtedness due Household Financial in the approximate amount of $8,000.00 and he shall hold the Plaintiff harmless therefrom.

11. THAT the $12,000.00 secured by the homeplace with Citi Financial shall be the responsibility of the Defendant and he shall hold the Plaintiff harmless therefrom.

Agnew testified that she did not want to enter into the divorce agreement, but she felt pressured because the attorneys had already told the trial judge that the parties had an agreement and were working on the final details. She stated that she agreed to pay the Household Financial mortgages because she knew that she would be liable for any remaining debt if the house was sold in foreclosure. According to Agnew, her attorney advised her to reject the agreement. Agnew testified that she read the "hold harmless" language in the divorce judgment, but did not understand what it meant. Pharr testified that he needed Agnew's assistance with the mortgage payments because he was not working at the time of the divorce. Further, he had never made enough money to pay all of the mortgages on the home.

As of the trial date, Agnew was unemployed. Most recently, she worked with Mobile Community Corrections. Agnew also worked for the State of Alabama in probation and parole and as a police officer for the City of Mobile. Agnew's net monthly income according to Schedule I was $1,932.58 (prior to losing her job). She has the following monthly expenses:

3

| | |
|---|---|
| Car payment | $403.00 |
| Mortgage | $696.00 |
| Electricity | $90.00 |
| Water | $36.00 |
| Telephone | $50.00 |
| Home maintenance | $20.00 |
| Food | $400.00 |
| Clothing | $75.00 |
| Laundry & Cleaning | $30.00 |
| Medical | $20.00 |
| Transportation | $250.00 |
| Auto insurance | <u>$78.00</u> |
| TOTAL | $1,965.00 |

Agnew's present husband works with a temporary employment agency, earning approximately $200 every two weeks when he is employed. Agnew plans to apply with the Mobile County School Board for a teaching position.

Pharr was also unemployed at the time of the trial. He had most recently worked at Rhodes Furniture until the business closed. He previously worked at the Mobile Press Register for ten years. Pharr had periods of unemployment during the marriage. Between his employment with the Mobile Press Register and Rhodes Furniture, Pharr worked at a gas station, a car dealership washing cars and at a uniform cleaning service. He has a commercial driving license, but has never worked as an "over the road" truck driver. He also taught karate as a second job. Pharr earned approximately $1,000 per month at his last job at Rhodes. Pharr testified that the management at Rhodes indicated that the employees should re-apply for their jobs when the new owner of the business re-opened the store. Pharr pays $194 per month for the Citi Financial mortgage on his home and insurance on his home at the rate of $400 every six months. He has utilities and some credit card debt.

4

## CONCLUSIONS OF LAW

Pharr alleges in his complaint that the two mortgage debts to Household Financial to be paid by Agnew in the divorce judgement are in the nature of support. Section 523(a)(5) excepts from discharge debts to a spouse for "support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court." To qualify under §523(a)(5), the debt must actually be "in the nature of alimony, maintenance and support." 11 U.S.C. §523(a)(5). In deciding whether the provisions of a divorce decree are in the nature of alimony and support, courts apply federal law rather than state law. *In re Strickland*, 90 F.3d 444, 446 (11th Cir. 1996). However, state law does "provide guidance in determining whether the obligation should be considered 'support' under §523(a)(5)." *Id*.

The Eleventh Circuit Court of Appeals outlined a court's inquiry in determining whether a debt is truly in the nature of support:

> [A] court cannot rely solely on the label used by the parties. As other courts have recognized , "'it is likely that neither the parties nor the divorce court contemplated the effect of a subsequent bankruptcy when the obligation arose.'" *In re Gianakas*, 917 F.2d 759, 762 (3d Cir. 1990) (citation omitted). The court must therefore look beyond the label to examine whether the debt actually is in the nature of support or alimony. *Id*. A debt is in the nature of support or alimony if at the time of its creation the parties intended the obligation to function as support or alimony. (citations omitted)
>
> *Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir. 2001).

The party seeking to have the debt held nondischargeable must prove the case by a preponderance of the evidence. *Cummings*, 244 F.3d at 1265. Courts have used a variety of factors to determine whether a debt is in the nature of support, including but not limited to: (1) whether the obligation is subject to contingencies, such as death or remarriage; (2) whether

5

the payment was fashioned to balance disparate incomes of the parties; (3) whether the obligation is payable in installments or a lump sum; (4) whether minor children are involved; and (5) whether there was need for support. *In re Prater*, 231 B.R. 819, 821 (Bankr. M.D. Fla. 1999); *In re Smith*, 207 B.R. 289, 291 (Bankr. M.D. Fla. 1997). This list is not exhaustive, and each factor need not be proven or considered in every case. *Horner v. Horner (In re Horner)*, 222 B.R. 918, 922 (S.D. Ga. 1998). "Although the factors considered by the bankruptcy court are relevant to our inquiry, the touchstone for dischargeability under §523(a)(5) is the intent of the parties." *Cummings*, 244 F.3d at 1266.

Pharr has the burden of proof to prove that the two debts to Household Financial were actually in the nature of support. He testified that he needed Agnew's assistance in paying the mortgages because he was unemployed at the time of the divorce, and because he had never made enough money to pay all of the mortgages on the home. However, Agnew testified that she agreed to pay the mortgage to Household Financial because she knew that she would be liable for any deficiency if Household Financial foreclosed on the home. Because the parties' testimony is so contradictory, the Court must also look to the terms of the divorce judgment. It makes no provision for alimony for Pharr. There were no children from the marriage. See *In re Fussell*, 303 B.R. 539, 545 (Bankr. S.D. Ga. 2003) (finding that a relatively short marriage which produces no children is an indication that a settlement agreement is intended to be a property settlement rather than a support obligation.) The judgment begins by outlining the division of personal property and then continues to divide the debt between the parties. Agnew was responsible for the $68,000 mortgage for ten years and the mortgage which is in her name only. Pharr was responsible for the remaining mortgages on the home. He had purchased the home

6

prior to the marriage and retained possession of it. Paragraph seven of the divorce judgment provides for a division of proceeds from the sale of the home if it was sold. This provision clearly indicates an intent to divide the property or the debt associated with it. Based on the foregoing, the Court finds that the two debts to Household Financial under paragraphs seven and nine of the divorce judgment are not in the nature of alimony and support pursuant to 11 U.S.C. §523(a)(5), and would therefore be dischargeable if they do not fall under 11 U.S.C. §523(a)(15).

Pharr alternatively argues that the mortgage debts to Household Financial are nondischargeable pursuant to 11 U.S.C. §523(a)(15), which provides that a property settlement obligation may be discharged under certain conditions. The debt can be discharged under §523(a)(15)(A) if the debtor does not have the ability to pay the debt, or under §523(a)(15)(B) if the benefit to the debtor outweighs the detrimental consequences to the nondebtor spouse. After the former spouse has proven that a debt exists and that the debt is not in the nature of maintenance and support, the debtor has the burden of proof for the elements of §523(a)(15). *In re Stone*, 199 B.R. 753, 783 (Bankr. N.D. Ala. 1996). If the debtor proves either the inability to pay or more detrimental consequences, the former spouse has the burden of rebutting the debtor's evidence. *Id*.

Pharr met his initial burden of proving that the debts exist and that they are not §523(a)(5) debts. Agnew must now prove that either or both of the conditions of §523(a)(15) exist. To determine whether Agnew has the ability to pay the debts at issue, the Court examines her income and expenses, and whether she has any funds left to pay the debt at issue. According to her bankruptcy schedules, Agnew had a monthly income of $1,932.58, and monthly expenses of $1,965.00, leaving a deficit of $32.42. Even if she is able to find another job at the same pay

7

level, Agnew would not have the ability to pay the Household Financial mortgages. Her expenses appear to be reasonable, and leave no discretionary income. Therefore, the Court finds that Agnew has met her burden of proof under §523(a)(15)(A), and the debts to Household Financial should declared dischargeable.

The Court will also consider whether Agnew proved that the benefit to herself outweighs the detriment to Pharr under §523(a)(15)(B). Discharging the debts to Household Financial is a clear benefit to Agnew. It is the detriment to Pharr that must be examined. If Agnew cannot make the mortgage payments to Household Financial, Pharr is in danger of losing his home to foreclosure. He testified at trial that he will not be able to make all three mortgage payments on his home. The fact that Pharr recently lost his job adds to the probability that he will lose the house. He may not be able to pay the Citi Financial mortgage that he is responsible for under the divorce judgment. The Court was not given a detailed account of Pharr's monthly expenses; however, he was questioned extensively about his work history. In the past, Pharr has worked teaching karate as a second job, but he dismisses the idea of returning to that type of work for reasons that are unclear to the Court. He has a commercial drivers' license, but has not sought employment in that field. It appears to the Court that Pharr has not made full use of his employment opportunities. The total of the mortgages on Pharr's home is approximately $95,000, and the value of the home according to the tax assessor is $48,000.00. The value of the home has undoubtedly eroded due to the storm damage that has not been repaired.

In comparing Agnew's benefit to Pharr's detriment in the discharge of the Household Financial debts, the Court concludes the benefit to Agnew outweighs the detriment to Pharr. Agnew does not have the funds to pay the debt, and is currently unemployed. Pharr may lose a

8

house with significant hurricane damage that is not covered by homeowners insurance. The value of the house is far less than the mortgage debt against it. If he does not find new employment, Pharr may be forced to file bankruptcy himself. Having to pay the Household Financial mortgages may send Pharr into bankruptcy sooner than he expected, but it is not the sole cause of his financial difficulty. "A bankruptcy court should not deny the debtor [her] fresh start simply because [her] former [spouse] has chosen not to seek the same relief on [his] own behalf when [his] circumstances warrant." *In re Reetz*, 281 B.R. 54, 60 (Bankr. S.D. Ala. 2001) citing *In re Daiker*, 5 B.R. 348, 352 (Bankr. D. Minn. 1980). For these reasons, the Court finds that the two debts to Household Financial under paragraphs seven and nine of the divorce judgment are dischargeable under 11 U.S.C. §523(a)(A) and (B). It is hereby

**ORDERED** that the relief sought in the Plaintiff's complaint to determine dischargeability pursuant to 11 U.S.C. §523(a)(5) and/or (a)(15) is **DENIED**; and it is further

**ORDERED** that the two debts to Household Financial referenced in paragraphs seven and nine of the divorce judgment dated September 23, 2003 are **DISCHARGEABLE**.

Dated: October 14, 2005

WILLIAM S. SHULMAN
CHIEF U.S. BANKRUPTCY JUDGE

9